[No. 3,171.]

GUADALUPA GARCIA DE RUBIDOEX, ADMINISTRA-
TRIX OF THE ESTATE OF LOUIS RUBIDOEX, DECEASED v.
ARTHUR PARKS.

PRINCIPAL AND AGENT.—The relations between an attorney-in-fact, who un-
    dertakes to care for and protect the land of his principal, and negotiate
    sales of the same, and the principal, are of a fiduciary nature, and the
    agent must not put himself, during his agency, in a position which is ad-
    verse to that of the principal.

IDEM.—Agents, from the nature of their employment, are subject to the
    rule which governs the relation of trustee and *cestui que trust*, and an
    act of the agent with respect to the subject-matter of the agency, inju-
    rious to the principal, may be avoided by the principal, as between
    themselves.

DEALINGS BETWEEN PRINCIPAL AND AGENT. — The agent and principal are
    not absolutely prohibited from dealing with each other in respect to the
    subject-matter of the agency or trust; but, in all their dealings with each
    other, the utmost good faith is required, and the burden of proof is on
    the agent to show affirmatively that he acted in good faith, fairly and
    honestly.

APPEAL from the District Court, Seventeenth Judicial
District, County of San Bernardino.

On the 16th day of March, 1867, Louis Robidoex, the
deceased, made the power of attorney mentioned in the
opinion, and he departed this life on the 24th day of Sep-
tember, 1868. On the 18th day of September, 1868, Robi-
doex, and his wife, the plaintiff here, executed to the de-
fendant a deed of one undivided one fourth of the Rancho
Curupa, in consideration of his services as attorney in fact
already performed, and to be continued as long as Robi-
doex should live. The other facts are stated in the opinion.

*V. E. Howard* and *H. C. Rolfe*, for the Appellant.

Parks was employed to sell as well as to manage. He
was, therefore, a trustee as well as agent. (Story on Agency,
Sec. 246; Bonv. Dic. Trust.) See the answer, folio 28, as
to the agency to sell. It is a settled rule that the trustee or
agent to sell cannot himself become the purchaser, either

directly or indirectly, not even at public auction. The purchase is presumed injurious to the beneficiary. (Hilliard's Vendors, p. 384, Sec. 2; 4 Kent, 438; *Torry* v. *Bank of Orleans*, 9 Paige 648, 662; *Copeland* v. *Insurance Co.*, 6 Pic. 203.) The *cestui que trust* is entitled to have the sale set aside, without showing any actual injury. (1 Story's Eq., Sec. 322; Hilliard on Vendors, pp. 384, 388, 855; *Campbell* v. *Walker*, 5 Vesey, 680; 3 Vesey 740.) When it is a mere agency, and not a technical trust, the purchase is regarded with great jealousy. (Story's Eq. Secs. 318, 316; Tiffany and Bullard, p. 553.) It cannot stand if there is any inadequacy of price, or improper influence. (Story's Eq., Secs. 321, 322; 2 Selden, 268.) There must be the utmost good faith when the agent purchases the subject of the agency. (Story's Eq. Secs. 315, 316, *a.*) The law presumes superiority and influence on the part of the agent or trustee. (Story's Eq. Sec. 329, *a.*) The evidence in this case does not rebut the presumption. The agent cannot deal with the subject for his own benefit. (*Hardenberg* v. *Bacon*, 33 Cal. 377; 29 Cal. 146; Story's Eq. Sec. 210; Story's Agency, 559; Story's Eq. Secs. 308 to 328; *Pryn* v. *Saltus*, 18 How. P. Rep. 518.) In this case the power was coupled with an interest.

The burden of proof is on the trustee or agent in cases where he can purchase to show that it is fair. (1 Story's Eq. Sec. 310, and especially Sec. 311 and note; Spencer's Eq. p. 943.) In this case inadequacy of consideration was combined with unsoundness of mind and improper influence. (Hilliard's Vendors, 370, 366, 367; *Harvey* v. *Sullen*, 46 M. 147.) There was also oppression. (Hilliard, p. 371.)

It is apparent from the whole testimony, that Rubidoex and his family were overreached in the transaction. The case shows the wisdom and justice of the rule, which permits the beneficiary to have the conveyance set aside at his election, if he applies within a reasonable time. (Story on Agency, Secs. 9, 210, 211; *Wormly* v. *Wormly*, 8 Wheat. 421; Story on Contracts, Sec. 298; Story's Eq. Secs. 322, 323.)

*Henry M. Willis*, for Respondent.

An attorney in fact, even under an unlimited power, is not a trustee. In order to set aside a deed obtained by an attorney from his client, damage to the client must not only be alleged, but it must be proven. (*Kisling* v. *Shaw,* 33 Cal. 425.) The findings support the judgment, and the testimony was conflicting, so that the Court will not disturb the judgment.

By the Court, CROCKETT, J. :

In March, 1867, Don Louis Rubidoex, being the owner of a rancho in San Bernardino County, made and delivered to the defendant a power of attorney, which recites that on account of his " general debility and ill health," he had constituted and appointed the defendant his attorney, for him and in his name, to take possession of and have the charge and control of all his real estate in that county, to commence and prosecute any actions which he might deem necessary, and to appear and defend actions, " and generally to do and perform all matters and things, transact all business, make, execute and acknowledge all contracts, orders and writings (except the signing of deeds of conveyance,) assurances and instruments, which may be requisite or proper to effectuate all or any of the premises, or any other matter or thing belonging to me, with the same powers, and to all intents and purposes with the same validity, as I could if personally present." When the power was made, Rubidoex was an old man, in feeble health, and for several years had been rendered almost helpless by a personal injury he had received; and had become so addicted to the excessive use of opium and intoxicating drinks, as greatly to impair his mind. Indeed, the testimony shows conclusively that at the date of the power, and from thence until his death, he was subject to paroxysms, produced by the use of opium and other stimulants, which rendered him, for the time being, completely imbecile, and greatly impaired the vigor of his intellect generally. In February, 1868, whilst the power of attorney was in force, and the defendant was acting under it, Rubidoex conveyed to him an undivided fourth part of the rancho then remaining unsold.

The only consideration recited in the deed is stated in these words: "That for and in consideration of the services of the said party of the second part, as attorney in fact of said Louis Rubidoex, Sr., duly performed, and being performed, the value thereof is duly acknowledged, said parties of the first part hereby give, grant, bargain sell," etc. It is not pretended that there was any other consideration for the deed than the services rendered and to be rendered by the defendant under the power of attorney. The plaintiff is the widow of Rubidoex and the administratrix of his estate; and the action is brought to set aside the deed on the ground of the trust relations between Rubidoex and the defendant, and that it was obtained by fraud, imposition and undue influence ; and on the further ground that Rubidoex had not sufficient mental capacity to enter into a valid contract. The judgment in the Court below was for the defendant, and the plaintiff appeals.

Among other facts, the Court found "that at the execution of said deed of one fourth of said rancho, the said Rubidoex was of sound understanding, and knew the nature and object of the deed." But that, for years prior to that time, Rubidoex had been a confirmed invalid, and that his intellect had been greatly impaired by disease and by the excessive use of opium and alcoholic drinks, was established by the uncontradicted testimony of a number of witnesses. There was, it is true, some evidence tending to show that, on the particular occasion when the deed was executed, he appeared to comprehend the terms of the instrument, and had sufficient intellect remaining to understand the nature of the transaction; but so far as we can judge from the record, the weight of the evidence was overwhelmingly to the contrary.

But, however this may be, it is admitted by the answer, that at the date of the deed the defendant was acting under the power of attorney, and the relation of principal and agent existed between the parties. It is further admitted that the defendant was then the attorney in fact of Rubidoex "to look after, care for and protect the interests, and negotiate sales of the property of the said Louis Rubidoex, Sr.,

deceased." While thus undertaking to care for and protect the interests of Rubidoex, and to negotiate sales of his property, he becomes himself the purchaser of one fourth of a valuable property. The relations between them were of a fiduciary nature; and in such cases the law exacts from the agent the utmost good faith and fairness in all dealings between them relating to the subject-matter of the agency. It may be regarded as a prevailing principle of the law that an agent must not put himself, during his agency, in a position which is adverse to that of his principal. For even if the honesty of the agent is unquestioned, and if his impartiality between his own interest and his principal's might be relied upon, yet the principal has, in fact, bargained for the exercise of all the skill, ability and industry of the agent, and he is entitled to demand the exercise of all this in his own favor." (1 Parsons on Contracts, 74, 75; Hilliard on Vendors, 384; Story on Agency, Section 246.)

After stating the rule, "that any act by an agent with respect to the subject-matter of the agency, injurious to his principal, may be avoided by the principal," as between themselves; as, for example, if an agent to sell become the purchaser, Mr. Hilliard, in his work on Vendors (page 386), proceeds to say that the confidential relations between the principal and agent, and the *cestui que trust* and the trustee, "are to some extent identical; all agents being in a certain sense trustees, and all trustees agents;" and that "agents, from the very nature of their employment, standing in a confidential capacity, are clearly subject to the rule" which governs the relation of trustee and *cestui que trust.* The parties occupying these relations are not absolutely prohibited from dealing with each other in respect to the subject-matter of the agency or trust; but, in all cases of purchases and bargains respecting property directly and openly made between principals and agents, the utmost good faith is required. The agent must conceal no facts within his knowledge which might influence the judgment of his principal, as to the price or value; and if he does, the sale will be set aside. The question, in all such cases, does not turn upon the point whether there is any intention to

cheat or not, but upon the obligation, from the fiduciary relation of the parties, to make a frank and full disclosure." (1 Story's Eq. Sec. 316, *a.*) In such cases, "the law presumes the existence of that superiority and influence on the one part, and that confidence and dependence on the other, which is the natural result of the relation, and will accordingly decree the cancelation of the contract, unless it appear affirmatively to have been equal and just." (1 Story's Eq. Sec. 329 *a.*) The burden of proof is on the agent to show, affirmatively, that he acted fairly and in good faith, and without concealment, and that the price paid was fair and just. (1 Story's Eq. Sec. 311.) The defendant, in this case, has failed to bring himself within these rules. Waiving the question whether Rubidoex had sufficient capacity to contract, it is admitted that he was an old man, greatly enfeebled by disease and by the excessive use of stimulants. In dealing with him in respect to his estate, it was incumbent on the defendant to disclose to him fully all the information he had acquired as to its present or prospective value, which might tend to enlighten him as to the propriety of selling on the terms proposed. It is not alleged or proved, nor does the Court find that any such disclosure was made. The Court, it is true, finds (contrary, as we think, to the weight of the evidence), that Rubidoex was of sound understanding, and knew the nature and object of the deed, and "that no fraud nor device was used by said defendant, or any other person in his behalf, to obtain the execution of said deed, and the value of the land therein deeded was not an unreasonable consideration for the services rendered and to be rendered by him." But this is not enough to uphold a transaction of this character between a decrepid, feeble old man and his confidential agent, who is averred in the complaint to have obtained "an entire ascendancy over the mind" of his principal; an averment which is not denied in the answer. There is nothing in the findings or proofs to rebut the inference that the deed may have resulted from this undue influence. Moreover, the finding as to the fairness and sufficiency of the consideration is not satisfactory. The value of the land

conveyed may not have been an unreasonable consideration for the services rendered "and to be rendered." But that is not the proper test. From this the contract does not "appear affirmatively to have been equal and just." On the contrary, it would seem to be unequal and unjust, and in every respect injudicious for a feeble old man to convey one quarter of his estate to his agent as a compensation for services not then rendered, and which might never be rendered. In every aspect in which we can view the case, we think this transaction ought not to stand.

Judgment reversed, and cause remanded for a new trial.